**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, | |
| Plaintiff, | Civil Action No. 20-cv-2256-CKK |
| v. | |
| U.S. DEPARTMENT OF THE TREASURY, *et al.*, | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF
PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 1

LEGAL STANDARDS ....................................................................................................... 2

ARGUMENT ...................................................................................................................... 4

I.       Defendants Are Improperly Withholding Material under FOIA Exemption 5 and the
         Deliberative Process Privilege ............................................................................... 4

         A.       USPS's Improper Withholdings ................................................................. 5

         B.       Treasury's Improper Withholdings ........................................................... 11

II.      USPS is Improperly Withholding Material under FOIA Exemption 6 ............................ 15

III.     USPS is Improperly Withholding an Email Concerning Mr. DeJoy's Appointment as
         Postmaster General as a "Non-Responsive Record" ...................................... 16

IV.      Defendants Have Failed to Demonstrate Compliance with Their Segregability
         Obligations ........................................................................................................... 17

V.       *In Camera* Review is Warranted ......................................................................... 18

CONCLUSION .................................................................................................................. 19

# TABLE OF AUTHORITIES

**Cases**

*100Reporters LLC v. DOJ*, 248 F. Supp. 3d 115 (D.D.C. 2017)....................................... 13

*Access Reports v. DOJ*, 926 F.2d 1192 (D.C. Cir. 1991) .................................................. 8, 10, 12

*ACLU v. CIA*, 710 F.3d 422 (D.C. Cir. 2013).................................................................... 8

*Arthur Andersen & Co. v. IRS*, 679 F.2d 254 (D.C. Cir. 1982)...................................... 4, 15

*Bloche v. Dep't of Def.*, 279 F. Supp. 3d 68 (D.D.C. 2017) ............................................ 17

*Burka v. HHS*, 87 F.3d 508 (D.C. Cir. 1996)................................................................... 2

*Carter v. Dep't of Commerce*, 830 F.2d 388 (D.C. Cir. 1987)........................................ 18

*Coastal States Gas Corp. v. DOE*, 617 F.2d 854 (D.C. Cir. 1980) ................................ 4, 5, 10, 12

*Competitive Enter. Inst. v. Dep't of Treasury*, 308 F. Supp. 3d 109 (D.D.C. 2018) ..................... 13

*CREW v. GSA*, 2021 WL 1177797 (D.D.C. Mar. 29, 2021)............................................ 11, 18

*Ctr. for Investigative Reporting v. CBP*, 436 F. Supp. 3d 90 (D.D.C. 2019) ..................... 3, 12, 13

*Ctr. for Pub. Integrity v. Dep't of Commerce*, 401 F. Supp. 3d 108 (D.D.C. 2019) ................... 11

*EFF v. DOJ*, 826 F. Supp. 2d 157 (D.D.C. 2011) .......................................................... 10

*EPIC v. DOJ*, 511 F. Supp. 2d 56 (D.D.C. 2007)............................................................ 11

*Fox News Network, LLC v. Dep't of Treasury*, 739 F. Supp. 2d 515 (S.D.N.Y. 2010) ......... 14, 15

*Heffernan v. Azar*, 317 F. Supp. 3d 94 (D.D.C. 2018) .................................................... 14

*Hussain v. DHS*, 674 F. Supp. 2d 260 (D.D.C. 2009) ..................................................... 3

*In re Sealed Case*, 121 F.3d 729 (D.C. Cir. 1997)........................................................... 5, 7, 13

*In re State St. Bank & Tr. Co. Fixed Income Funds Inv. Litig.*,
    2009 WL 1026013 (S.D.N.Y. Apr. 8, 2009)............................................................... 17

*Judge Rotenberg Educ. Ctr. v. FDA*, 376 F. Supp. 3d 47 (D.D.C. 2019)........................ 13

*Judicial Watch, Inc. v. Dep't of Commerce*, 375 F. Supp. 3d 93 (D.D.C. 2019) .............. 3

*Judicial Watch, Inc. v. Dep't of Treasury*, 796 F. Supp. 2d 13 (D.D.C. 2011) ........................... 11

*Judicial Watch, Inc. v. FDA*, 449 F.3d 141 (D.C. Cir. 2006) ..................................................... 3, 7

*Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208 (D.C. Cir. 2013) ..................................... 6

*King v. DOJ*, 830 F.2d 210 (D.C. Cir. 1987) ................................................................................ 3

*Kleinert v. Bureau of Land Mgmt.*, 132 F. Supp. 3d 79 (D.D.C. 2015) ........................................ 7

*Mapother v. DOJ*, 3 F.3d 1533 (D.C. Cir. 1993) .......................................................................... 4

*Mayer, Brown, Rowe & Maw LLP v. IRS*, 537 F. Supp. 2d 128 (D.D.C. 2008) ......................... 14

*Mayer, Brown, Rowe & Maw LLP v. IRS*, 562 F.3d 1190 (D.C. Cir. 2009) .............................. 14

*Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242 (D.C. Cir. 1977)............................. 17

*Milner v. Dep't of Navy*, 562 U.S. 562 (2011)........................................................................... 2, 7

*Morley v. CIA*, 508 F.3d 1108 (D.C. Cir. 2007) ....................................................................... 5, 7

*Multi Ag Media LLC v. USDA*, 515 F.3d 1224 (D.C. Cir. 2008) .............................................. 3, 15

*Nat'l Sec. Counselors v. CIA*, 960 F. Supp. 2d 101 (D.D.C. 2013).................................... 13, 16

*Nation Mag. v. U.S. Customs Serv.*, 71 F.3d 885 (D.C. Cir. 1995) ............................................. 17

*NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975)....................................................4, 5, 11, 15

*PEER v. EPA*, 926 F. Supp. 2d 48, 57 (D.D.C. 2013) ................................................................. 18

*Petroleum Info. Corp. v. Dep't of Interior*, 976 F.2d 1429 (D.C. Cir. 1992) ........................... 14

*Quinon v. FBI*, 86 F.3d 1222 (D.C. Cir. 1996).................................................................... 18, 19

*Schiller v. NLRB*, 964 F.2d 1205 (D.C. Cir. 1992) .................................................................. 7, 10

*Senate of P.R. v. DOJ*, 823 F.2d 574 (D.C. Cir. 1987) ............................................................. 12

*Stolt-Nielsen Transp. Grp. v. United States*, 534 F.3d 728 (D.C. Cir. 2008) ............................. 4

*Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106 (D.C. Cir. 2007) ............................................. 18

*Trans-Pacific Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022 (D.C. Cir. 1999)........ 17

*U.S. Army Corps of Eng'rs v. Hawkes Co.*, 136 S. Ct. 1807 (2016) ............................................. 11

*U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777 (2021) ........................................ 4

*United Am. Fin., Inc. v. Potter*, 531 F. Supp. 2d 29 (D.D.C. 2008) ............................................ 18

**Statutes**

5 U.S.C. § 552(a)(8)(A)(i) ............................................................................................... 3

5 U.S.C. § 552(b)(5) ....................................................................................................... 4

5 U.S.C. § 552(b)(6) ..................................................................................................... 15

5 U.S.C. § 552(b)(9) ..................................................................................................... 17

**Other Authorities**

FOIA Improvement Act of 2016, Pub. L. No. 114-185, 130 Stat. 538 (2016).............................. 3

S. Rep. No. 114-4 (2015) ................................................................................................. 4

## INTRODUCTION

In this suit under the Freedom of Information Act ("FOIA"), Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") challenges the refusal of Defendants U.S. Postal Service ("USPS") and U.S. Department of the Treasury ("Treasury") to release records shedding light on the controversial selection of Postmaster General Louis DeJoy and other matters of public interest. The parties have now cross-moved for summary judgment, and CREW is narrowing the dispute to less than a dozen withholdings, most of which are based on Exemption 5 and the deliberative process privilege.[1]

CREW is entitled to summary judgment on each disputed withholding. Both USPS and Treasury have improperly invoked Exemption 5 to withhold material that is neither predecisional nor deliberative. Moreover, USPS's *Vaughn* submissions contain clear inaccuracies that cast doubt on both its privilege claims and the veracity of the agency's representations. USPS has also failed to offer any explanation for some of its Exemption 6 claims, and is improperly withholding an email concerning Postmaster General DeJoy's appointment as a "non-responsive record." Both agencies have also failed to demonstrate compliance with their segregability obligations. Finally, given the inaccuracies and deficiencies in the agencies' *Vaughn* submissions and the small number of withholdings in dispute, CREW respectfully requests *in camera* review.

## BACKGROUND

On May 6, 2020, the USPS Board of Governors (the "Board") announced its selection of Louis DeJoy to serve as Postmaster General of the United States. Pl.'s Stmt. of Undisputed Material Facts ("Pl.'s Facts") ¶ 1. Mr. DeJoy assumed office on June 16, 2020. *Id.* ¶ 2. He was

---

[1] CREW does not challenge the adequacy of Defendants' searches. Nor does CREW challenge any withholdings of the USPS Office of Inspector General ("OIG").

the first postmaster general in nearly two decades who had not served as a career USPS employee. *Id.* ¶ 3.

Mr. DeJoy's appointment drew scrutiny for a host of reasons, including his history as a major Republican political donor, concerns that he would seek to undermine voting by mail in response to former President Trump's baseless claims of voter fraud, and his apparent conflicts of interest stemming from his sizeable financial holdings in USPS contractors and competitors. *Id.* ¶ 4. There are also questions surrounding former Treasury Secretary Steven Mnuchin's involvement in recruiting DeJoy as Postmaster General. *Id.* ¶ 5.

To shed light on these issues, CREW submitted FOIA requests to USPS and Treasury seeking records relating to voting by mail, the retirement of former Postmaster General Megan Brennan, and the appointment of Mr. DeJoy as her successor, among other things. *See* Am. Compl. ¶¶ 16, 23, ECF No. 6; Defs.' Stmt. of Undisputed Material Facts ¶¶ 2, 6, ECF No. 23-1 ("Defs.' Facts"). After exhausting their administrative remedies, CREW filed this suit against Treasury on August 19, 2020, and amended its complaint to add USPS on September 2, 2020. Following completion of productions, Defendants reconsidered and withdrew exemption claims as to certain records. *See* Defs.' Facts ¶¶ 5, 9; Declaration of Janine Castorina ¶¶ 10, 11, 34, ECF No. 23-6 ("Castorina Decl."); Declaration of Michelle A. Dickerman ¶ 16, ECF No. 23-2 ("Dickerman Decl."). The parties now cross-move for summary judgment.

## LEGAL STANDARDS

FOIA "mandates that an agency disclose records on request, unless they fall within one of nine exemptions. These exemptions are 'explicitly made exclusive,' and must be 'narrowly construed.'" *Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011). "[T]he burden is on the agency to show that requested material falls within a FOIA exemption." *Burka v. HHS*, 87 F.3d 508, 514 (D.C. Cir. 1996).

"To enable the Court to determine whether documents properly were withheld, the agency must provide a detailed description of the information withheld through the submission of a so-called '*Vaughn* index,' sufficiently detailed affidavits or declarations, or both." *Hussain v. DHS*, 674 F. Supp. 2d 260, 267 (D.D.C. 2009); *see also Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 146 (D.C. Cir. 2006). The agency must "disclos[e] as much information as possible without thwarting the exemption's purpose," *King v. DOJ*, 830 F.2d 210, 224 (D.C. Cir. 1987), and can obtain summary judgment only if its submissions "contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith," *Multi Ag Media LLC v. USDA*, 515 F.3d 1224, 1227 (D.C. Cir. 2008). "At all times, courts must bear in mind that FOIA mandates a 'strong presumption in favor of disclosure.'" *Id.*

For any document withheld as exempt, the agency must separately satisfy the "foreseeable harm" standard of the FOIA Improvement Act of 2016, Pub. L. No. 114-185, 130 Stat. 538. *See* 5 U.S.C. § 552(a)(8)(A)(i). Under those amendments, "'an agency must release a record—even if it falls within a FOIA exemption—if releasing the record would not reasonably harm an exemption-protected interest' and if the law does not prohibit the disclosure." *Judicial Watch, Inc. v. Dep't of Commerce*, 375 F. Supp. 3d 93, 98 (D.D.C. 2019). To meet this "independent and meaningful burden," an agency must "'identify specific harms to the relevant protected interests that it can reasonably foresee would actually ensue from disclosure of the withheld materials' and 'connect[] the harms in [a] meaningful way to the information withheld.'" *Ctr. for Investigative Reporting ("CIR") v. CBP*, 436 F. Supp. 3d 90, 106 (D.D.C. 2019). An agency thus cannot rely on "nearly identical boilerplate statements" or "generic and nebulous articulations of harm." *Id.* Nor can it withhold information "merely because public

3

officials might be embarrassed by disclosure, because errors and failures might be revealed, or because of speculative or abstract fears." S. Rep. No. 114-4, at 7.

## ARGUMENT

### I.   Defendants Are Improperly Withholding Material under FOIA Exemption 5 and the Deliberative Process Privilege

Exemption 5 protects "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). To fall within Exemption 5, "a document must meet two conditions: 'its source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it.'" *Stolt-Nielsen Transp. Grp. v. United States*, 534 F.3d 728, 733 (D.C. Cir. 2008). At issue here is the deliberative process privilege, which covers documents that are both "predecisional" and "deliberative." *Mapother v. DOJ*, 3 F.3d 1533, 1537 (D.C. Cir. 1993). A document is predecisional if "it was generated before the adoption of an agency policy" and deliberative if it "reflects the give-and-take of the consultative process." *Coastal States Gas Corp. v. DOE*, 617 F.2d 854, 866 (D.C. Cir. 1980).

As the Supreme Court recently reaffirmed, the deliberative process privilege requires a "functional rather than formal inquiry." *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 787 (2021). Courts thus do not blindly accept the agency's labels or designations, but rather examine "the function of the document[]" and "the context of the administrative process which generated" it. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 138 (1975). Other important considerations are "the nature of the decisionmaking authority vested in the office or person issuing the disputed documents" and "the positions in the chain of command of the parties to the documents." *Arthur Andersen & Co. v. IRS*, 679 F.2d 254, 258 (D.C. Cir. 1982). "A document

from a subordinate to a superior official is more likely to be predecisional, while a document moving in the opposite direction is more likely to contain instructions to staff explaining the reasons for a decision already made." *Coastal States*, 617 F.2d at 868. "Finally, even if the document is predecisional at the time it is prepared, it can lose that status if it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public." *Id.* at 866.

"The deliberative process privilege does not shield documents that simply state or explain a decision the government has already made." *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997); *see also Sears*, 421 U.S. at 155 (document not privileged where it merely relayed a decision "already reached" and recipient "ha[d] no decision to make"). Nor does it apply to "[f]actual material that does not reveal the [agency's] deliberative process." *Morley v. CIA*, 508 F.3d 1108, 1127 (D.C. Cir. 2007).

Here, both USPS and Treasury have improperly invoked the privilege to withhold material that is neither predecisional nor deliberative.[2]

### A.    USPS's Improper Withholdings

**USPS 0033-0039.** This is a Board of Governors email chain including two emails—one from June 17, 2020, and another from May 7, 2020—and a four-page attachment. The June 17 email was sent from John Barger to Roman Martinez IV, both Board members, and CCed three others: Robert Duncan, another Board member; Mike Elston, Assistant Secretary of the Board, *see* Castorina Decl. ¶ 17; and Kimberly Arder, who the agency's *Vaughn* Index identifies without describing her title or role. *See* USPS *Vaughn* Index at 6, ECF No. 23-7. The body of the June 17

---

[2] Defendants have filed redacted versions of the challenged withholdings at ECF Nos. 23-7 (USPS) and 23-4 (Treasury).

email is redacted under Exemption 5. *See* USPS 0033. The June 17 email forwards the May 7

email and accompanying attachment, both of which are redacted under Exemptions 5 and 6. *See*

USPS 0033-0035.[3]

> USPS's *Vaughn* Index describes the withheld email chain as follows:
>
> This email chain reflects ongoing internal agency discussion related to the process for selecting a new Postmaster General, as well as internal strategy for announcing that selection to the public. The discussion and associated edits to the ultimate announcement reflect the USPS's ongoing discussions about selecting a new Postmaster General and announcing his selection to the public.
>
> The withheld document is not part of the final decision by the Postal Service, as shown by the fact that discussions about how to announce Postmaster DeJoy's selection remained ongoing.
>
> This information is pre-decisional and deliberative because the decision-making process about press strategy for Postmaster DeJoy's selection was on-going at the time of this email and USPS had not yet issued its final press release on the subject.

USPS *Vaughn* Index at 6.

This description does not withstand scrutiny. For starters, the chronology does not add

up: USPS issued its final press release announcing Mr. DeJoy's selection on May 6. Pl.'s Facts ¶

1. So, when the withheld emails were sent—first on May 7 and then over a month later on June

17—there was not any "ongoing" deliberative process relating to "selecting a new Postmaster

General" or "announcing that selection to the public," nor is it true that "USPS had not yet issued

its final press release on the subject" at that point. *See* USPS *Vaughn* Index at 6. And nothing in

the redacted versions of the emails indicate that they contain any "discussion and associated edits

to the ultimate announcement" of Mr. DeJoy's selection, *id.*, which was made *before* both emails

were sent. These patent inaccuracies cast doubt on the veracity of the agency's *Vaughn*

---

[3] As explained *infra* Part II, USPS has provided no justification for the Exemption 6 redactions at USPS 0033-0035.

submissions. *See Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013) (agency cannot obtain summary judgment where its *Vaughn* submissions are "called into question by contradictory evidence in the record"); *Schiller v. NLRB*, 964 F.2d 1205, 1209 (D.C. Cir. 1992) ("There is no excuse for submitting a *Vaughn* index that contains errors, even minor ones. We expect agencies to ensure that their submissions in FOIA cases are absolutely accurate."), *abrogated on other grounds by Milner v. Dep't of Navy*, 562 U.S. 562 (2011). They also confirm that the withheld records were neither predecisional nor deliberative, but rather concerned "decision[s] the government ha[d] already made." *In re Sealed Case*, 121 F.3d at 737.

In their brief, Defendants seek to offer further details about USPS 0033-0039 that appear nowhere in USPS's *Vaughn* submissions. *Compare* Defs.' Mem. at 16-17, *with* USPS *Vaughn* Index at 6 & Castorina Decl. ¶¶ 29-38. But counsel's "post hoc" assertions "cannot make up for the [agency declaration's] silence" on this issue, and should therefore be disregarded by the Court. *Morley*, 508 F.3d at 1120; *see also Judicial Watch*, 449 F.3d at 150 (disregarding counsel's post hoc explanation that was unsupported by agency's declarations); *Kleinert v. Bureau of Land Mgmt.*, 132 F. Supp. 3d 79, 88 (D.D.C. 2015) (same).

Even if they were considered, counsel's assertions would not change the analysis. For one thing, they incorrectly state "DeJoy's selection was not formally announced until May 6, *2021* and he did not take office until June 15, *2021*." Defs.' Mem. at 17 (emphasis added). Both events actually occurred in 2020. *See* Pl.'s Facts ¶¶ 1-2. They also offer no justification for withholding the redacted portions of the May 7 and June 17 emails. *See* Defs.' Mem. at 16-17. Disregarding those emails entirely, counsel instead claims the four-page *attachment* to the May 7 email reflects predecisional "search efforts undertaken before the Board of Governor's selection." *Id.* But there is no indication of what role, if any, the attachment could have played in

the agency's deliberative process for selecting the Postmaster General, which had already

concluded when the attachment was sent on May 7. *See Access Reports v. DOJ*, 926 F.2d 1192,

1195 (D.C. Cir. 1991) ("[T]he 'predecisional' label clearly focuses attention on the role of the . .

. document in the decisionmaking process.").

Moreover, the Board described its "search efforts" for the Postmaster General position in

detail in USPS's May 6 press release and in a document prepared for an "open session" Board

meeting, which USPS released to CREW. *See* Press Release, <u>Board of Governors Announces

Selection of Louis DeJoy to Serve as Nation's 75th Postmaster General</u>, USPS, May 6, 2020,

<u>https://bit.ly/35iCAhp</u> (detailing the Board's "extensive nationwide search" efforts); USPS 0027-

0032 (Board of Governors Compensation and Governance Committee Report prepared for the

Board's May 8, 2020 Open Session meeting) (detailing the committee's "thorough and

comprehensive search process" with assistance from two "world class executive search firms").

Insofar as the withheld attachment contains information that was officially disclosed in USPS's

May 6 press release, at the May 8, 2020 "open session" Board meeting, or in documents released

to CREW, any privilege claim with respect to that material has been waived. *See ACLU v. CIA*,

710 F.3d 422, 426 (D.C. Cir. 2013) ("[W]hen an agency has officially acknowledged otherwise

exempt information through prior disclosure, the agency has waived its right to claim an

exemption with respect to that information.").

Because Defendants have failed to demonstrate that USPS 0033-0039 contain any

predecisional and deliberative material, and because evidence in the record points to the

contrary, the withheld material must be released in full.

**USPS 0018, USPS 0019-0020.** This is another Board of Governors email chain, and it

includes two emails from April 22, 2020. The first email was sent from Board member Roman

Martinez IV to Assistant Secretary Michael Elston, CCing Board members John Barger and Robert M. Duncan, and forwarded an email that USPS has withheld as a "[n]on-responsive record."[4] *See* USPS 0018-0019. The second email is Mr. Duncan's response to Mr. Martinez. *See* USPS 0019. Both emails are redacted under Exemption 5. *See id.* Although the emails' subject lines are redacted, USPS's *Vaughn* Index says it reads "Memo." USPS *Vaughn* Index at 2-3.

Repeating what appears to be boilerplate language used to describe other withholdings, USPS's *Vaughn* Index says the "email chain reflects ongoing internal agency discussion related to the process for selecting a new Postmaster General, as well as internal strategy for announcing that selection to the public." *Id.* It adds that "[t]he discussion and associated edits to the ultimate announcement reflect the USPS's ongoing discussions about selecting a new Postmaster General and announcing his selection to the public," and that, at the time, USPS had not yet "released the draft press announcement under discussion." *Id.* at 2-4.

Here again, USPS's *Vaughn* Index descriptions do not align with the redacted documents. Nothing in the redacted email chain suggests any "discussion" or "associated edits" to any "draft press announcement"; the emails do not even include any attachment that could be the purported "draft press announcement."[5] The redacted discussion by the two Board members consists of what appears to be one sentence by Mr. Martinez and one word by Mr. Duncan. *See* USPS 0019. This terse exchange seems to have been prompted by the bottom email in the chain, which, as

---

[4] This improper "non-responsive" withholding is addressed *infra* Part III.

[5] This stands in contrast to other withheld emails, which do appear to reflect edits to a draft press release attachment. *See* USPS *Vaughn* Index at 4-5 (withholding emails with the subject line "Press release edits"); USPS 0021 (cover email denoting two "Attachments," the titles of which are redacted); USPS 0022-0023 (email attachments withheld in full).

noted, USPS is withholding as a "[n]on-responsive record." *Id.* USPS's position that this email is non-responsive precludes any inference that it concerns the supposed "draft press announcement" regarding Mr. DeJoy's selection. USPS *Vaughn* Index at 3-4. Nor does the email's subject line ("Memo") suggest that the email chain concerns any draft press release. It instead appears that USPS recycled the same boilerplate description for various Board of Governors emails, regardless of whether they accurately describe the withholdings at issue. *See* USPS *Vaughn* Index at 2-6. This fails to satisfy the agency's burden and casts further doubts on its *Vaughn* submissions. *See Schiller*, 964 F.2d at 1209 ("We expect agencies to ensure that their submissions in FOIA cases are absolutely accurate.").

**USPS 0007-0017.** This is a "strategic planning document titled 'General Election Outreach to States – Strategic Plan" that USPS has withheld in full. USPS *Vaughn* Index at 2. USPS claims it "was a part of an on-going iterative decision-making process related to the USPS's strategy to deal with reaching out to the States about election mail, and further concerned other issues associated with communicating with the states to facilitate mail in voting, including the evolving process of handling individual state related voting laws and issues." *Id.*

The document's title, however, suggests the agency actually utilized it as its "Strategic Plan" for "General Election Outreach to States." And there is no indication that the document was merely a draft or proposal that had not yet been implemented by USPS in engaging with states. The Strategic Plan thus seems to have been "the denouement of [agency] decisionmaking rather than part of its give-and-take." *Access Reports*, 926 F.2d at 1195. And if, as appears to be the case, the Strategic Plan was "adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with" states or other outside entities, *Coastal States*, 617 F.2d at 866, this is another ground for deeming it non-privileged. *See EFF v. DOJ*, 826 F.

10

Supp. 2d 157, 171 (D.D.C. 2011) (denying agency summary judgment where there was a "particularly high" "likelihood" that withheld material was "relied upon or adopted as official positions after their preparation") (quoting *EPIC v. DOJ*, 511 F. Supp. 2d 56, 71 (D.D.C. 2007)).[6]

**Header information in Board of Governors emails (USPS 0018, 0019, 0021, 0025, 0033).** In each of these Board of Governors emails, USPS has invoked the deliberative process privilege to redact certain header information—namely, the subject lines and attachment titles—without explanation. *See* USPS *Vaughn* Index at 2-6. Because USPS has failed to show that the withheld header information contains any predecisional and deliberative material, it must be segregated and released. *See CREW v. GSA*, 2021 WL 1177797, at *13 (D.D.C. Mar. 29, 2021) (Kollar-Kotelly, J.) (ordering agency to segregate and release "header portions of . . . emails," including "the senders, recipients, transmission dates, subject lines, and attachment titles," where agency "failed to justify its withholding of this information"); *Ctr. for Pub. Integrity v. Dep't of Commerce*, 401 F. Supp. 3d 108, 121 (D.D.C. 2019) (same); *Judicial Watch, Inc. v. Dep't of Treasury*, 796 F. Supp. 2d 13, 29 (D.D.C. 2011) (same).

### B.    Treasury's Improper Withholdings

**UST_000840-000843.** This is a four-page email chain from May 6, 2020 that Treasury has withheld in full. Treasury *Vaughn* Index at 2, ECF No. 23-3. Treasury describes it as an exchange "between Eric Ueland (White House, former Assistant to the President and Director of

---

[6] Insofar as USPS is asserting that the document was merely an interim "Strategic Plan" that was subject to revision, this does not change the analysis. *See Sears*, 421 U.S. at 158 n.25 ("[T]he possibility that the decision reached . . . may be overturned . . . does not affect its finality for [deliberative process] purposes."); *cf. U.S. Army Corps of Eng'rs v. Hawkes Co.*, 136 S. Ct. 1807, 1814 (2016) (holding, under more rigorous finality standard governing judicial review of agency action, that mere "possibility" agency may "revise" its decision "does not make an otherwise definitive decision nonfinal").

the Office of Legislative Affairs), former Secretary Mnuchin, and Mark Meadows (former White House Chief of Staff) regarding coronavirus relief and other legislation," which the agency asserts "contains deliberative and pre-decisional discussions of possible contents of the legislation, potential timing, and strategy related to the legislation." *Id.*

This explanation is inadequate for several reasons. First, it does not "pinpoint an agency decision or policy to which the document[s] contributed." *Senate of P.R. v. DOJ*, 823 F.2d 574, 585 (D.C. Cir. 1987); *see also id.* ("The failure to specify the relevant final decision constitutes a sufficient ground for remanding [deliberative process claims] to the district court."); *CIR*, 436 F. Supp. 3d at 102 (applying principle). Treasury says the emails contain comments on certain legislation, but it does not explain why these particular officials were commenting on the legislation, to whom their comments were relayed, or how the authors' views contributed to the purported decisionmaking process at hand (whatever that may be). *See Coastal States*, 617 F.2d at 868 ("[T]he agency has the burden of establishing what deliberative process is involved, and the role played by the documents in issue in the course of that process . . . [I]f documents are not a part of a clear 'process' leading to a final decision on the issue . . . they are less likely to be properly characterized as predecisional."); *Access Reports*, 926 F.2d at 1195 ("[T]he 'predecisional' label clearly focuses attention on the role of the . . . document in the decisionmaking process."). Nor is there any explanation of the authors' relative "decisionmaking authority" with respect to the issues under consideration. *See CIR*, 436 F. Supp. 3d at 102 ("Explaining decisionmaking authority is an essential ingredient to justifying withholdings under the deliberative process exemption."). Treasury thus has not met its burden.

**UST_000791-000793.** This is an April 10, 2010 email between Treasury officials with the subject line "USPS Board List of Modernization Efforts." UST_000791. In it, a Treasury

official writes "[b]elow is the initial list of modernization efforts that the USPS has prioritized for funding (follow up from call). Requests are approximately $25 billion." *Id.* The remainder of the email is withheld under the deliberative process privilege, *id.*, which Treasury justifies by relying on USPS's declaration, *see* Treasury *Vaughn* Index at 1. USPS's declaration claims the withheld material "reflects inter-agency discussion regarding Postal Service funding priorities for modernization efforts" that "do not reflect the final decision of either the Postal Service or the Treasury regarding the funding sought or any of the details therein." Castorina Decl. ¶ 31.

USPS errs by "defin[ing] the deliberative process" at hand so "broadly" that it sweeps in a "litany of subsidiary decisions," which themselves constituted "final" decisions for deliberative process purposes. *Judge Rotenberg Educ. Ctr. v. FDA*, 376 F. Supp. 3d 47, 67 (D.D.C. 2019); *accord CIR*, 436 F. Supp. 3d at 102; *100Reporters LLC v. DOJ*, 248 F. Supp. 3d 115, 153 (D.D.C. 2017); *Nat'l Sec. Counselors v. CIA*, 960 F. Supp. 2d 101, 189-90 (D.D.C. 2013). Even if broader decisionmaking about USPS's funding was ongoing at the time, the withheld material reflects a subsidiary decision regarding "modernization efforts that the USPS *ha[d] prioritized* for funding" and transmitted to Treasury.[7] UST_000791 (emphasis added). Because USPS's prioritization decision was a discrete decision unto itself, the withheld material is not privileged. *See In re Sealed Case*, 121 F.3d at 737 (privilege "does not shield documents that simply state or explain a decision the government has already made"). The Court should reject the agency's attempt to define a "nebulous umbrella process" that would "effectively shield[] all agency action from review without accounting for any subsidiary agency decisions." *100Reporters*, 248 F. Supp. 3d at 153.

---

[7] There is no indication that these were "draft" priorities. *See* Defs.' Mem. at 10 (citing *Competitive Enter. Inst. v. Dep't of Treasury*, 308 F. Supp. 3d 109, 119 (D.D.C. 2018) (noting in dicta that "draft office priorities" might be privileged)).

**UST_000550-000553.** This is a July 1, 2020 email chain in which Monica Crowley, former Assistant Secretary for Public Affairs, wrote to former Secretary Mnuchin about "an effort by television host Samantha Bee to get members of the public to tag former Secretary Mnuchin on Twitter and voice their support for USPS and vote-by-mail." Treasury *Vaughn* Index at 1. Treasury has withheld the ensuing exchange between Mr. Mnuchin and Ms. Crowley, claiming "[t]he two redacted sentences reflect an internal deliberative and pre-decisional discussion of whether and how to respond publicly to this effort." *Id.*

Predecisional deliberations about an agency's potential public statements can be privileged only "if their release would reveal the status of internal deliberations on *substantive policy matters*." *Fox News Network, LLC v. Dep't of Treasury*, 739 F. Supp. 2d 515, 545 (S.D.N.Y. 2010) (emphasis added); *accord Heffernan v. Azar*, 317 F. Supp. 3d 94, 125-27 (D.D.C. 2018) ) (agency failed to show "pre-final draft press release" was privileged where its *Vaughn* submissions provided "no indication as to what deliberative process the withheld pre-final draft press release concerned or *its role in the formulation of policies or recommendations for policy change*") (emphasis added); *Mayer, Brown, Rowe & Maw LLP v. IRS*, 537 F. Supp. 2d 128, 139 (D.D.C. 2008) (rejecting deliberative process claims as to draft press releases that "d[id] not bear on . . . policy formulation"), *aff'd*, 562 F.3d 1190 (D.C. Cir. 2009); *see also Petroleum Info. Corp. v. Dep't of Interior*, 976 F.2d 1429, 1435-37 (D.C. Cir. 1992) (holding that "materials must bear on the formulation or exercise of agency policy-oriented judgment" to be privileged, and rejecting privilege claim where information "lack[ed] . . . association with a significant policy decision").

Here, there is no indication that disclosure of Treasury's purported decisionmaking about "[w]hether and how" to respond to comedian Samantha Bee's tweets would "reveal the status of

[Treasury's] internal deliberations on substantive policy matters." *Fox News*, 739 F. Supp. 2d at 545. Because Treasury has failed to make that showing, its privilege claims fail.[8]

## II.        USPS is Improperly Withholding Material under FOIA Exemption 6

Exemption 6 covers "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The exemption requires a "balancing analysis," under which the court must "first determine whether disclosure of the files 'would compromise a substantial, as opposed to *de minimis*, privacy interest.'" *Multi Ag Media*, 515 F.3d at 1229. Only if the agency shows a "greater than *de minimis* privacy interest" must the court proceed to "weigh that privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, disclosure would work a clearly unwarranted invasion of personal privacy." *Id.* at 1230-31.

USPS made several Exemption 6 redactions to USPS 0033-0035—the Board of Governors email chain discussed above with emails from June 17 and May 7, 2020—but has provided no justification for them. *See* USPS *Vaughn* Index at 6 (only invoking Exemption 5 as to USPS 0033-35); Castorina Decl. ¶¶ 39-44 (no mention of USPS 0033-0035 in Exemption 6 discussion). These unexplained redactions are improper and, absent any justification for non-disclosure, the withheld material must be released in full.

---

[8] That the Treasury employee "label[ed] her answer" to Mr. Mnuchin as "Draft/deliberative/predecisional" is hardly determinative. *See* Defs.' Mem. at 8. What matters is the actual "function of the document[]" and "the context of the administrative process which generated" it, *Sears*, 421 U.S. at 138, not the labels or designations affixed by agency officials. *See Arthur Andersen*, 679 F.2d at 257 (agency's "designation of . . . documents . . . as 'drafts' does not end the [deliberative process] inquiry").

**III.    USPS is Improperly Withholding an Email Concerning Mr. DeJoy's Appointment as Postmaster General as a "Non-Responsive Record"**

As noted, USPS has withheld a single email that appears in two responsive email chains between Board members from April 22, 2020, on the ground that the email is a "[n]on-[r]esponsive record." USPS *Vaughn* Index at 2-4 (USPS 0018 & USPS 0019-0020). USPS claims it "concerns an earlier USPS OIG investigation into a company that Postmaster General DeJoy had previously worked at, but not at the time of the OIG's investigation." *Id.* USPS thus "determined that this email was a distinct record from the email chains responsive to CREW's request." *Id.*

Even assuming it was appropriate for USPS to define a single email within an otherwise responsive email chain as a distinct "record" for FOIA purposes, *see* Defs.' Mem. at 16 n.6, the email is improperly withheld because it is responsive to CREW's FOIA request. CREW requested, among other things, "all communications between and among members of the USPS Board of Governors regarding the qualifications of Louis DeJoy to serve as Postmaster General of the United States from January 1, 2020 to the present." Am. Compl. ¶ 23. By USPS's own account, the withheld email appeared in an April 2020 chain where Board members discussed Louis DeJoy's appointment as Postmaster General, and the email specifically concerned "an earlier USPS OIG investigation into a company that Postmaster General DeJoy had previously worked." USPS *Vaughn* Index at 2-4. The redacted documents suggest that this supposedly "non-responsive" email is what prompted the discussion among Board members that USPS did deem responsive (but withheld under Exemption 5). *See* USPS 0018-0020.

Viewed in context, then, the withheld email was plainly part of the Board members' broader discussion about Mr. DeJoy's appointment and fitness to serve as Postmaster General. The email thus should have been deemed responsive to CREW's request, particularly given

USPS's "obligation to construe the plaintiff's FOIA request liberally." *Nat'l Sec. Couns.*, 960 F.

Supp. 2d at 183 (rejecting agency's non-responsiveness determination because it rested on overly

narrow reading of plaintiff's FOIA request) (citing *Nation Mag. v. U.S. Customs Serv.*, 71 F.3d

885, 890 (D.C. Cir. 1995)); *cf. In re State St. Bank & Tr. Co. Fixed Income Funds Inv. Litig.*,

2009 WL 1026013, at *1 (S.D.N.Y. Apr. 8, 2009) (directing parties in civil discovery not to

"redact any portion of a document on the ground that the portion is non-responsive and

irrelevant" because such redactions "breed suspicions" and "may deprive the reader of context").

Because the email is responsive and USPS has not invoked any FOIA exemption to justify

withholding it, it must be released.[9]

## IV.   Defendants Have Failed to Demonstrate Compliance with Their Segregability Obligations

Even when FOIA exemptions apply, "[a]ny reasonably segregable portion of a record

shall be provided to any person requesting such record after deletion of the portions which are

exempt." 5 U.S.C. § 552(b)(9). The agency must segregate and release all non-exempt portions

of a document unless they are "inextricably intertwined with exempt portions." *Trans-Pacific*

*Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1027 (D.C. Cir. 1999). And the

agency must provide a "detailed justification," not just "conclusory statements," to prove that it

has released all reasonably segregable information. *Mead Data Cent., Inc. v. Dep't of Air Force*,

566 F.2d 242, 261 (D.C. Cir. 1977).

---

[9] The allegedly "non-responsive" email may refer to a 2001 USPS OIG audit of New Breed Logistics that raised questions about whether the company "knowingly overbilled the Postal Service." Pl.'s Facts ¶¶ 6-7. Mr. DeJoy served as chief executive of New Breed Logistics from 1983 to 2014, meaning he worked at the company during the OIG's 2001 audit. *See id.* ¶ 6. So, if the withheld email does concern that audit, then USPS's current representations that Mr. DeJoy did not work at the company "at the time of the OIG's investigation" would not be accurate. *See* USPS *Vaughn* Index at 2-4.

Both agencies offer conclusory segregability justifications. *See* Castorina Decl. ¶¶ 50-52;

Dickerman Decl. ¶ 21. These do not suffice, particularly since there is "'evidence that would

warrant a belief by a reasonable person' that segregable material exists." *Bloche v. Dep't of Def.*,

279 F. Supp. 3d 68, 82 (D.D.C. 2017) (quoting *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106,

1117 (D.C. Cir. 2007)). Indeed, both agencies have indiscriminately withheld documents in full

that likely contain some purely factual or otherwise exempt material. *See supra* Part I.A (USPS

withholdings include Board of Governors email exchanges and attachments, and "Strategic Plan"

for "General Election Outreach to States"); Part I.B (Treasury withholdings include four-page

email chain withheld in full and fully redacted "USPS Board List of Modernization Efforts"); *see*

*also PEER v. EPA*, 926 F. Supp. 2d 48, 57, 61 (D.D.C. 2013) (ordering agency to segregate and

release "background paragraphs" of report containing "'purely factual' material"); *United Am.*

*Fin., Inc. v. Potter*, 531 F. Supp. 2d 29, 41 (D.D.C. 2008) (agency's "conclusory statement" on

segregability did "not enable the Court to discern why purely factual information in the public

domain . . . is not reasonably segregable"). Similarly, both agencies have improperly withheld,

without explanation, certain non-exempt email "header information." *See supra* Parts I.A-B; *see*

*also CREW*, 2021 WL 1177797, at *13 (ordering agency to segregate and release email header

information). All such material must be segregated and released.

## V.    *In Camera* Review is Warranted

"The decision to conduct an *in camera* review is committed to the 'broad discretion of

the trial court judge.'" *Quinon v. FBI*, 86 F.3d 1222, 1227 (D.C. Cir. 1996). Although

discretionary, "*in camera* review may be particularly appropriate when . . . the agency affidavits

are insufficiently detailed to permit meaningful review of exemption claims," *id.* at 1228, or

when "information contained in agency affidavits is contradicted by other evidence in the

record," *Carter v. Dep't of Commerce*, 830 F.2d 388, 393 (D.C. Cir. 1987).

As explained *supra* Part I, both agency's *Vaughn* submissions lack sufficient detail to "permit meaningful review" of certain exemption claims and, in USPS's case, the agency's descriptions of some withholdings are affirmatively "contradicted by other evidence in the record." *In camera* review would also be minimally burdensome since less than a dozen withholdings are in dispute. *See Quinon*, 86 F.3d at 1228 (identifying "number of the withheld documents" as an "important[] factor" in deciding whether to conduct *in camera* review). In these circumstances, *in camera* review is warranted.

## CONCLUSION

The Court should grant CREW's cross-motion for summary judgment and deny Defendants' motion for summary judgment.

Date: July 1, 2021                             Respectfully Submitted,

                                               */s/ Nikhel S. Sus*
                                               Nikhel S. Sus
                                               (D.C. Bar No. 1017937)
                                               CITIZENS FOR RESPONSIBILITY AND
                                               ETHICS IN WASHINGTON
                                               1331 F Street, NW
                                               Suite 900
                                               Washington, DC 20004
                                               Telephone: (202) 408-5565
                                               Fax: (202) 588-5020
                                               nsus@citizensforethics.org

                                               *Counsel for Plaintiff*

19