UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>U.S. DEPARTMENT OF THE TREASURY, *et al.*,<br><br>　　　　Defendants. | Civil Action No. 20-2256 (CKK) |

**MEMORANDUM OPINION**
(August 2, 2022)

This Freedom of Information Act ("FOIA") case arises from Plaintiff Citizens for Responsibility and Ethics in Washington's ("CREW") requests to Defendants U.S. Department of the Treasury ("Treasury"), U.S. Postal Service ("USPS"), and U.S. Postal Service Office of the Inspector General ("USPS OIG") for records regarding mail-in voting and the selection of Louis DeJoy as Postmaster General of the United States. The parties contest the withholding of certain records under the deliberative process privilege. Because the Court concludes that some of the outstanding records do not qualify as deliberative, and upon consideration of the pleadings,[1] the

---

[1] The Court's consideration has focused on the following briefing and materials submitted by the parties:
- Defendants' Motion for Summary Judgment ("Defs.' Mot."), ECF No. 23;
- Plaintiff's Memorandum in Support of Plaintiff's Cross-Motion for Summary Judgment and Opposition to Defendants' Motion for Summary Judgment ("Pl.'s Mot."), ECF No. 24-1;
- Defendants' Response to Plaintiff's Motion for Summary Judgment and Reply in Support of their Motion for Summary Judgment ("Defs.' Repl."), ECF No. 26;
- Plaintiff's Reply in Support of Plaintiff's Cross-Motion for Summary Judgment ("Pl.'s Repl."), ECF No. 28; and
- The following documents *in camera*: USPS3, USPS4 and USPS5, USPS9, headers in USPS2-USPS6, and Treasury7.

1

relevant legal authority, and the record as a whole, the Court shall **GRANT IN PART** and **DENY IN PART** Defendants' [23] Cross-Motion for Summary Judgement and **GRANT IN PART** and **DENY IN PART** Plaintiff's [24] Cross-Motion for Summary Judgment.

## I.  BACKGROUND

This case concerns three discrete FOIA requests.  First, on June 20, 2020, CREW submitted a FOIA request to Treasury, seeking "six categories of records that, broadly speaking, concerned voting by mail; the retirement of former Postmaster General Megan Brennan; and the appointment of Louis DeJoy as Postmaster General."  Defs.' Mot. 2 (citing Am. Compl. ¶ 16).  Second, on June 16, 2020, CREW submitted a FOIA request to USPS, seeking to acquire "ten categories of records" generally concerning

> materials relating to voting by mail that were prepared for former Postmaster General Brennan, Postmaster General DeJoy, Congress-members of [sic] their staff, the USPS OIG, the USPS Board of Governors, any state governors or their staff, as well as records relating to the departure of Postmaster General Brennan and the appointment of Postmaster General DeJoy.

Defs.' Mot. 3 (citing Am. Compl. ¶ 23). Third and finally, on June 16, 2020, CREW submitted a FOIA request to USPS OIG, seeking to acquire "five categories of documents."  Defs.' Mot. 5 (citing Am. Compl. ¶ 35).

> The request generally sought materials prepared by USPS OIG employees concerning voting by mail for Postmaster General DeJoy and for members of Congress or their staff; other kinds of USPS OIG documents concerning voting by mail; and any communications between USPS OIG and members of Congress or their staff concerning Louis DeJoy's appointment as Postmaster General.

---

In an exercise of its discretion, the Court finds that holding oral argument would not be of assistance in rendering a decision. *See* LCvR 7(f).

2

*Id.* On September 2, 2020, CREW filed its operative Amended Complaint alleging, broadly, that Defendants had not provided all responsive documents. *See generally* Am. Compl. 6-8. The parties met and conferred, and, from late 2020 to early 2021, Defendants conducted additional searches and provided CREW with additional responsive records. *See* ECF Nos. 12-17. CREW contested a number of Defendants' withholdings, and the parties have now completed cross-briefing for summary judgment. At issue currently is Defendants' Exemption 5 claims regarding the following documents: USPS3, USPS4 and USPS5, USPS9, headers in USPS2-USPS6, and Treasury7 documents (*Vaughn* Index at 1–4, 6, ECF No. 23-7; *Vaughn* Index at 2, ECF No. 23-3) ("Disputed Documents").

## II. LEGAL STANDARD

The FOIA authorizes a district court only "to enjoin [a federal] agency from withholding agency records or to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). This case, like a "vast majority" of FOIA cases, can be decided on summary judgment. *See Brayton v. Office of U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011).

Summary judgment is appropriate upon a showing that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In a FOIA case, the Court may award summary judgment to an agency solely on the information provided in affidavits or declarations when they describe "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *accord Am. Civil Liberties Union v. U.S. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011); *see*

3

*also Vaughn v. Rosen*, 484 F.2d 820, 826 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1974). Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)). Rather, a plaintiff "must point to evidence sufficient to put the Agency's good faith into doubt." *Ground Saucer*, 692 F.2d at 771. Otherwise, "'uncontradicted, plausible affidavits showing reasonable specificity and a logical relation to the exemption are likely to prevail.'" *Schoenman v. FBI*, 841 F. Supp. 2d 69, 80 (D.D.C. 2012) (quoting *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 509 (D.C. Cir. 2011) (alteration omitted)).

On summary judgment, the district court must conduct a "de novo" review of the record, 5 U.S.C. § 552(a)(4)(B), "to ascertain whether the agency has sustained its burden of demonstrating that the documents requested . . . are exempt from disclosure." *Assassination Archives & Research Ctr. v. CIA*, 334 F.3d 55, 57 (D.C. Cir. 2003) (citation and internal quotation marks omitted). "Consistent with the purpose of the Act, the burden is on the agency to justify withholding requested documents." *Beck v. Dep't of Just.*, 997 F.2d 1489, 1491 (D.C. Cir. 1993). Only after an agency has proven that "it has fully discharged its disclosure obligations" is summary judgment appropriate. *Weisberg v. U.S. Dep't of Just.*, 705 F.2d 1344, 1350 (D.C. Cir. 1983).

### III. DISCUSSION

#### A. Undisputed Issues

As noted above, CREW no longer disputes the adequacy of Treasury's and USPS's searches, any of USPS OIG's withholdings, any of Treasury's and USPS's withholdings under FOIA Exemption 6 and Exemption 7, and Treasury's withholdings of UST_000791-000793 and

4

UST_000550-000553 under FOIA Exemption 5. Pl.'s Mot. at n.1; Pl.'s Reply at n.1. As such, the Court grants summary judgment in part as to these issues in favor of Defendants.

### B. FOIA Exemption 5 & the Deliberative Process Privilege

Exemption 5 protects "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). To fall within Exemption 5, "a document must meet two conditions: 'its source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it.'" *Stolt-Nielsen Transp. Grp. v. United States*, 534 F.3d 728, 733 (D.C. Cir. 2008) (quoting *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001)). In essence, Exemption 5 provides grounds for withholding documents that would fall under a variety of recognized privileges available to Government agencies in civil litigation including, of relevance to this case, the deliberative process privilege.

The deliberative process privilege is intended to "prevent injury to the quality of agency decisions." *Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975). More specifically, the privilege "serves to assure that subordinates within an agency will feel free to provide the decisionmaker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism; to protect against premature disclosure of proposed policies before they have been finally formulated or adopted; and to protect against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). To that end, the privilege protects "documents and other materials that would reveal advisory opinions,

5

recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997) (internal quotation marks and citation omitted).

For the privilege to apply, the government must establish that the material at issue is both "predecisional" and "deliberative" in nature. *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785-86 (2021). "A document is predecisional if it was 'prepared in order to assist an agency decision maker in arriving at his decision,' rather than to support a decision already made." *Petroleum Info. Corp. v. Dep't of the Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992) (quoting *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975)). In order to determine whether a document was prepared to assist an agency decisionmaker in arriving at the decision, the Court "'must consider whether the agency treats the document as its final view on the matter.'" *Jud. Watch, Inc. v. United States Dep't of Just.*, 20 F.4th 49, 54 (D.C. Cir. 2021) (quoting *United States Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 786 (2021).

A document is deliberative if "it reflects the give-and-take of the consultative process," *Coastal States*, 617 F.2d at 866, and if it was "prepared to help the agency formulate its position." *U.S. Fish & Wildlife Serv.*, 141 S. Ct. at 786; *see also Pub. Citizen, Inc. v. OMB*, 598 F.3d 865, 876 (D.C. Cir. 2010) ("To qualify under Exemption 5, a document must also be a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters.") To determine whether a document reflects the give-and-take of the consultative process, the Court considers "the 'who,' i.e., the roles of the document drafters and recipients and their places in the chain of command; the 'what,' i.e., the nature of the withheld content; the 'where,' i.e., the stage within the broader deliberative process in which the withheld material operates; and

the 'how,' i.e., the way in which the withheld material facilitated agency deliberation." *Jud. Watch, Inc. v. United States Dep't of Just.*, 20 F.4th 49, 56 (D.C. Cir. 2021).

If a privilege applies, the agency must further demonstrate that disclosure of the document will lead to a foreseeable harm. 5 U.S.C. § 552(a)(8)(A)(i) ("An agency shall . . . withhold information under this section only if . . . the agency reasonably foresees that disclosure would harm an interest protected by an exemption . . . .").

1. USPS3

USPS3 is a fully withheld document entitled "General Election Outreach to States Strategic Plan[.]" Revised *Vaughn* Index, ECF No. 33-1 at 1.  USPS3 was created by the office responsible for managing mail initiatives and presented to the Board of Governors and other executive leaders. *Id.*  CREW contends the "Strategic Plan" label suggests the agency implemented it in its engagement with states and notes that USPS does not contend the document is a draft or proposal. Pl.'s Mot. at 10.  USPS inists that the document was part of ongoing agency discussions about how to handle voting by mail and does not contain "the actual agency decision." Revised *Vaughn* Index, ECF No. 33-1 at 1.  USPS further contends that the agency later implemented a plan that was observable and well-documented. *Id.*

Notably, while USPS claims the document does not contain the final agency decision, USPS does not maintain that the strategic plan discussed by the document was distinct from the plan later implemented or explain with any detail why the document does not reflect the final agency decision. *Id.*  Rather, USPS claims USPS3 "reflects USPS's evolving and ongoing efforts to work with states" Defs.' Mot. at 15, and was part of an assessment of the then-ongoing outreach to states during the 2020 primaries. *Vaughn* Index, ECF No. 23-7 at 1-2 ("The document at issue reflects USPS's strategy to deal with state outreach,"); Decl. of Janine Castorina, ECF No. 23-6 at

7

¶ 32 (the documents "reflect earlier lessons learned by the Postal Service during the 2020 primary elections and how; and reveal the Postal Service's ongoing efforts to implement those lessons moving forward.").

To the extent the strategic plan outlined in USPS3 reflects *ongoing* efforts to work with states at the time, the strategic plan outlined in USPS3 was not predecisional because it was in fact "adopted, formally or informally, as the agency position on an issue" and "used by the agency in its dealings with" states. *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). Regardless of whether the "final" agency decision appears in some other, unidentified document, USPS 3 is clearly a final document circulated among USPS that states a final agency position on how to address mail-in voting. It is entitled "General Election Outreach to States Strategic Plan," is formatted as a final document, contains no redline or "draft" language, and includes forms to be used by agency staff in furtherance of agency policy. As such, USPS3 largely "[re]states [and] explain[s] a decision the government has already made." *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997).

Moreover, USPS3 uses language that strongly suggests the strategic plan was an already-made policy choice: "While we will outreach to all states and territories, this Strategic Plan prioritizes states and state election officials for targeted outreach, identifies the key messages and content, and outlines the internal resources required to executive [sic] this plan effectively." USPS3 at 1. USPS3 continues, "[t]he remaining states will also be contacted to ensure there are no anticipated changes in processes[.]" USPS3 at 2. Although USPS3 was a strategic plan for the upcoming 2020 General Election, USPS3's language also confirms that it documented the ongoing and final strategy for outreach during the primaries: "The briefing sheets for each state will indicate whether the state has already conducted their primary elections, which include state and local

elections." USPS3 at 2.   With regard to the 2020 General Election, USPS3 also makes clear that the strategy was to prepare in advance by reaching out to states in the leadup to the General Election: "The remaining states will also be contacted to ensure that there are no anticipated changes in processes or absentee ballot design planned for the general election." USPS3 at 2.

Because USPS3 describes the strategic plan for ongoing, implemented outreach efforts to states, *Vaughn* Index, ECF No. 23-7 at 1-2, USPS3 "simply describe[s] already-made and in-place policy choices." *Reps. Comm.*, 3 F.4th at 367 (finding that draft PowerPoint presentations lacking a deliberative component and describing pre-existing policy do not fall within the deliberative process privilege).  *Cf. also NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, n.25 (1975) (representation that agency policy was undergoing review does not change earlier policy's finality).  The Court's *in camera* review of USPS3, combined with the context of USPS3 discussed above, confirms that the document reflects a final strategic plan the agency implemented.  As a result, USPS3 is not predecisional and does not fall under the deliberative process privilege.

    2.  USPS4 and USPS5

USPS4 and USPS5 consist of a three-page email chain partially withheld via redactions. Revised *Vaughn* Index, ECF No. 33-1 at 1.  The emails, sent on April 22, 2020, involve USPS Board Members Roman Martinez, John Berger, and Mike Duncan who voted on the selection of the next Postmaster General. *Id.* at 1-2.  The emails involve discussion between the Board Members concerning information about individuals who were under consideration for selection as the next Postmaster General. *Id.*  The selection process was ongoing at this time, and the next Postmaster General was not announced until May 6, 2020.  Pl.'s Stmt., ECF No. 24-2 at ¶ 1.

The Court concludes the USPS4 and USPS5 were predecisional because the new Postmaster General had not yet been selected.  The Court also concludes that USPS4 and USPS5

are deliberative because they document discussion by agency decisionmakers about the ongoing selection process. *See Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 368 (D.C. Cir. 2021) ("Because the emails discussed the content of a new policy and alternative paths for its effective implementation, they fall squarely within the deliberative process privilege."). The Court further agrees that release of these documents would harm the agency's decisionmaking process by chilling the deliberative process and creating confusion about the agency's final decisions. *See Pinson v. U.S. Dep't of Just.*, 202 F. Supp. 86, 111 (D.D.C. 2016) (internal discussion of candidate for agency leadership position properly withheld under Exemption 5).

    3.   USPS9 (USPS 0033-0039)

USPS9 consists of a redacted email chain and a fully withheld attachment. Revised *Vaughn* Index, ECF No. 33-1 at 5. The emails, dated June 17, 2020 and May 7, 2020, involve discussion between USPS Board Members and a contractor about media strategy in advance of the new Postmaster General's selection. Decl. of Janine Castorina, ECF No. 23-6 at ¶ 33; ECF No. 23-8 at 42-44. Although USPS made the initial media announcement of the new Postmaster General on May 6, 2020, the record shows that the process of discussing the new Postmaster General's selection in the media was ongoing and subject to change. The Court's *in camera* review of USPS9 confirms that the email discussion concerned ongoing strategy related to potential media inquiries regarding the new Postmaster General.

The Court's *in camera* review of USPS9 also confirms that the fully withheld document attached to the emails predates the May 6, 2020 announcement and concerns the details of the selection process. In the context of the email discussion, the document was used to inform the agency's media strategy regarding the selection.

10

Given this context, the Court concludes USPS9 is predecisional because the discussion concerned strategy to address to future media inquiries regarding the new Postmaster General and the selection process. The Court also concludes USPS9 is deliberative because it reflects the evolving discussion between the relevant agency decisionmakers on the best way to handle media inquiries related to the new Postmaster General. The Court agrees that release of these documents would harm the agency's decisionmaking process by chilling the selection process and creating confusion about the agency's final selection decision. *See Pinson*, 202 F. Supp. 3d at 115 n.17.

4. Treasury7 (UST_000840-000843)

Treasury7 consists of an email chain, dated May 6, 2020, between former Assistant to the President and Director of the Office of Legislative Affairs Eric Ueland, former Treasury Secretary Steve Mnuchin, and former White House Chief of Staff Mark Meadows. Revised *Vaughn* Index, ECF No. [33-2] at 1. The emails involve discussion of potential renewals of the CARES Act and its Paycheck Protection Program as well as other potential coronavirus relief legislation, including the content, timing, and Executive Branch strategy related to such legislation. *Id.*; Decl. of Michelle Dickerman, ECF No. 23-2 at ¶ 13. Treasury contends that release "would inhibit their ability to communicate about and respond to legislative developments in Congress." *Id.*

The Court's *in camera* review of Treasury7 confirms that the discussions concerned specific potential proposals for the renewal of the CARES Act that the decisionmakers had knowledge of as well as COVID-19 relief legislation the Executive Branch was considering. Each of the parties involved were high-level decisionmakers in the Executive Branch, and Secretary Mnuchin's role in the discussions reflect his role in the Treasury's deliberations on how to respond to potential legislation concerning the economy. The Court concludes Treasury7 is predecisional and deliberative because it predated the potential legislation discussed and reflects ongoing

discussions about what the agency strategy would be with respect to such legislation by the relevant decisionmakers. *See Am. Oversight v. U.S. Dep't of Transp.*, Civ. A. No. 18-1272, 2022 WL 103306, at *7 (D.D.C. Jan. 11, 2022) (holding discussions between agency staff and Congressional counterparts on draft legislation subject to deliberative process privilege). The Court agrees that releasing Treasury 7 would harm the agency by chilling the deliberative process and creating confusion about the agency's final decisions. *See id.* at *8.

### C. Segregability

In addition to CREW's specific claims regarding header information addressed above, CREW alleges broadly that Defendants failed to satisfy their segregability obligations. "Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt[.]" 5 U.S.C. § 552(b). "[T]he government may similarly demonstrate that it released all reasonably segregable parts of otherwise exempt records by submitting an affidavit indicating that an agency official conducted a review of each document and determined that the documents did not contain segregable information." *Citizens for Resp. & Ethics in Washington v. U.S. Dep't of State*, No. 20-CV-2044 (CRC), 2022 WL 424965, at *3 (D.D.C. Feb. 11, 2022) (citing *Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002)). Defendants have complied with those obligations here. Defendants have submitted detailed *Vaughn* indices that explain the nature of each withheld document and why there is no additional portion of any fully- or partially-withheld document that can be released. Additionally, Defendants' declarations aver that Defendants conducted a "line-by-line review . . . to identify information exempt from disclosure or for which a discretionary waiver of exemption could be applied." Castorina Decl., ECF No. 23-6 ¶¶ 51-52. FOIA requires nothing more of Defendants. *ACLU v. CIA*, 109 F. Supp. 3d 220, 244 (D.D.C. 2015).

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' [23] Motion for Summary Judgment and **GRANTS IN PART** and **DENIES IN PART** Plaintiff's [24] Cross-Motion for Summary Judgment. Summary judgment is granted in favor of Plaintiff as to USPS3 and granted in favor of Defendants as to USPS4 and USPS5, USPS9, headers in USPS2-USPS6, and Treasury7. An appropriate order accompanies this Memorandum Opinion.

**Dated**: August 2, 2022

                                                  /s/
                                       COLLEEN KOLLAR-KOTELLY
                                       United States District Judge